UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-22117-CIV-LENARD/DUBÉ

FRANCIS M. WILLS,

     Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.
_____/

## **REPORT AND RECOMMENDATION**

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #40) and the Motion for Summary Judgment filed by the Defendant (D.E. #41) pursuant to the Order of Reference entered by the Honorable Joan A. Lenard, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff Francis M. Wills (hereinafter "Wills" or "Plaintiff").

Wills filed applications for disability insurance benefits and supplemental security income (SSI) on September 17, 1996. (R. 135-138, 675-676).[1] These applications, which asserted disability as of February 1, 1996, were denied initially and on reconsideration. (R. 86-99, 678-696). Following a hearing, on December 31, 1998, the ALJ issued a decision denying the claim for benefits. (R. 703-718). A request for review filed with the appeals council was denied. (R. 790-791).

On July 19, 2002, Wills filed his appeal with this Court for review of the ALJ's denial of his

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

disability application. (D.E. #1). This Court remanded the case on March 28, 2003, in order that a cassette tape of the 1998 administrative hearing could be located with specific instructions that if the cassette tape could not be located, the claim would be remanded to an ALJ for a de novo hearing. (R. 793-794).

On January 22, 2001, Wills filed a second application for disability insurance benefits. (R. 732-735). The second application was also denied initially and on reconsideration. (R. 719-722, 725-728). Wills requested an ALJ review of the second denial and on January 9, 2004 a consolidated hearing was ultimately held for both the September, 17, 1996 and January 22, 2001 applications. (R. 38-85).

Plaintiff, age 53 at the time of the hearing on January 22, 2001, testified that he had a ninth grade education and that he was unable to read and write. (R. 46-47). The Plaintiff stated that his prior employment included a medical transporter, as well as a warehouse porter and bridge tender. (R. 49-50). According to Plaintiff, he was unable to work due to a bad back, spine and right foot. (R. 51).

Wills testified that he had increased pain when walking, carrying, climbing stairs and sometimes when sitting. (R. 53). He also indicated that he feels additional pain in his spine when washing dishes or lifting up a soda can. (R. 54-55). Plaintiff also reported that he does not leave his house unless he needs to and can only walk between two and three blocks before having to sit down. (R. 55). Wills also stated that he could not stand or sit for long periods at a time. (R. 56). Plaintiff added that he relies on neighbors to clean his house and take him shopping for food. (R. 57-58).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. These records consisted almost entirely of treatment by the Department of Veteran Affairs. (R. 190-197, 198-200, 201-398, 420-517, 536-649, 650-670, 673). On January 16, 1996, Plaintiff was

2

examined at the VA medical center for pain in his right ankle as well as lower back pain. (R. 283). X-ray results of his right ankle revealed tendon calcification and Plaintiff was prescribed 400mg of Motrin. (R. 283). On May 15, 1996, additional x-rays taken of the Plaintiff's back revealed lumbar scoliosis and hypertrophic changes at L1 and L2. (R. 671). X-ray results on September 4, 1996 showed hypertrophioc degenerate changes at C3, C4, C5, and C6 with no evidence of fracture, dislocation or bone destruction. (R. 672).

On November 14, 1996, Wills was seen by Dr. Norman H. Azen for a consultative evaluation. (R. 176-178). Dr. Azen reviewed Plaintiff's medical history including the joint, back, neck and ankle pain. Dr. Azen noted that at that time Plaintiff was taking Atrovent and Albuterol for bronchitis and wheezing. (R. 176). Dr. Azen's report showed that Plaintiff possessed restrictions to his range of motion in the lumbar spine, possibly voluntary. (R. 177-178). Plaintiff was able to hop on both feet, and stand and walk on his toes and heels. (R. 177). Dr. Arzen made the following assessment:

> This gentleman complains of multiple joint pains in his low back and his limbs. He brings copies of [x-rays] showing an old fracture of the left 4th toe and otherwise normal left foot. The right foot showed a non-displaced fracture of the middle toe and was otherwise unremarkable. This [x-ray] was from 7 yrs. ago. Lumbar [x-ray] was reported to show scoliosis.

(R. 178).

On December 5, 1996, the VA recommended Plaintiff for physical therapy to address bilateral shoulder and neck pain. (R. 226).

Progress notes taken on December 10, 1996, reveal that Plaintiff had begun physical therapy for bilateral shoulder pain and neck pain. (R. 220).

On April 8, 1997, Plaintiff returned to the VA Medical Center after spraining his right ankle. (R. 262). Several weeks later, on April 23, 2007, Plaintiff returned to have the ankle reexamined and

it was determined that there was chronic lateral right ankle instability. (R. 264).

On April 16, 1998, the VA issued a rating decision in regard to Plaintiff's entitlement to nonservice-connected pension for the time period of December 10, 1996 through March 12, 1998. (R. 673). The report listed the following:

> The medical records show that the veteran has been diagnosed with scoliosis and osteroarthritis of the lumbar spine with spina bifida of L1. This condition cause constant pain with some radiculopathy. He walks with a wide based gait with an antalgic patterns. This disability is evaluated as 40 percent disabling. He also suffered a right ankle fracture with instability. This disability is evaluated at 20 percent disabling. The veteran has problems with reading and writing and his I.Q. test showed below average. Based upon the disabilities noted, and the lack of reading and writing skills, reasonable doubt has been resolved in favor of the claimant. The effective date is the date of the claim.

(R. 673).

On February 23, 2004, the ALJ issued a decision finding that Plaintiff was not disabled during the relevant time period of February 1, 1996 through December 31, 1999. (R. 34). The ALJ found the Plaintiff's subjective symptoms and allegations of severe and intractable pain and its impact on his ability to work are not credible. (R. 33). The ALJ also determined that during the relevant period, the Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. 34). Based on these findings the ALJ determined the Plaintiff was not disabled as defined in the Social Security Act and was able to perform other types of work during the relevant time period.

## LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971);

Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

In the present case the ALJ found that during the relevant time period, Plaintiff was unable

to perform his past relevant work. (R. 33). The ALJ also found that during this same period, Plaintiff was able to perform work activities at the light level of physical exertion, that Plaintiff's "subjective symptoms and allegations of severe and intractable pain and its impact on his ability to work are not credible" and that Plaintiff could perform significant numbers of jobs in the national economy. (R. 33, 34).

In his first argument, Plaintiff contends that the ALJ erred by failing to mention, discuss or weigh the disability finding of the claimant's impairments by the VA.

The findings of another agency on disability while not binding on the Commissioner, are entitled to great weight. Falcon v. Heckler, 732 F. 2d 827, 831 (11th Cir. 1984). In Williams v. Barnhart, the 11th Circuit vacated the district court's order and remanded with instructions that the ALJ review the claimants claim and "specifically address in its decision the VA's Rating Decision." Williams v. Barnhart, 180 Fed. Appx. 902 (11th Cir. 2006).

The medical records provided to the ALJ consisted almost entirely of Plaintiff's treatment by the DVA. (R. 27). Those records contained a Rating Decision dated April 16, 1998. (R. 673). The Rating Decision concluded that the Plaintiff had a 40 percent disability rating cause by scoliosis and osteoarthritis of the lumbar spine with spina bifida of L1. (R. 673). Additionally, the Rating Decision assigned a 20 percent disability rating due to instability caused by a right ankle fracture. The VA concluded that as a result of the disability, the Plaintiff was unable to secure gainful employment. (R. 673).

The ALJ did not assign great weight to these records as the ALJ did not discuss the VA's Rating Decision. Moreover, the ALJ did not provide sufficient reasons or a basis for doing so. Accordingly, it is the recommendation of this Court that this cause be remanded on this basis for the

7

proper evaluation of the VA's Rating Decision.

In his second argument, the Plaintiff contends that based upon the RFC of the ALJ, the Plaintiff is unable to perform the other jobs determined by the vocational expert.

In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. <u>Wilson v. Barnhard</u>, 284 F. 3d 1219, 1227 (11th Cir. 2002); <u>Jones v. Apfel</u>, 190 F. 3d 1224, 1229 (11th Cir. 1999).

The following colloquy occurred between the ALJ and Nicholas Fidanza, the VE with regard to the specific hypothetical questions posed:

> Q: If you were to assume the following hypothetical situation, if I found that the claimant's testimony was totally credible, specifically that he could lift or carry very little weight, not, not even five pounds, not even a dish or a pot, could sit for 20 to 30 minutes at a time, then would have to get up and stretch, stand for 10 minutes at a time, then would have to move around rather than sit down, that his ability to walk is limited to a short distance of less than a block, memory and concentration are affected to the point where nothing, no complex or detailed tasks could be done, only simple unskilled ones. Would that person be able to do any of the jobs that, that the claimant did in the past?
>
> A: I don't believe so.
>
> Q: Would such a person be able to do other jobs, light jobs?
>
> A: I don't believe so.
>
> Q: The State Agency didn't, apparently didn't recognize any physical limitations in this current claim. The only thing I have from them is the mental assessment, which indicated moderate impairment in the area of concentration. So let's say, we'll accept for the sake of argument what the previous ALJ found, that the claimant could essentially a full range of light work, but also had moderate impairments for dealing with other people. Let me make sure I got that right. Yeah. And adding to that – moderate limitation dealing with other people would be no contact with the public.

A: Yes.

Q: And no frequent contact with supervisors, co-workers, occasional would be okay, but not frequent.

A: Okay.

Q: And adding on to that a moderate limitation in the area of concentration, which was indicated in the current claim by the review physicians. And that would be ruling out any complex or detailed type of tasks, but only allowing for simple unskilled tasks. Would that person be able to perform the jobs that the claimant did in the past?

A: No.

Q: Could such a person do any other light unskilled jobs –

A: Yes.

Q: That you know of?

A: Yes.

Q: Could you give me examples of those?

A: Yes, Your Honor, injection molding tender, 556.685-038, lights, SVP of 2, 900 in the region, 3,000 in the state, in excess of 60,000 nationally.

Q: So that's unskilled, it wouldn't require any frequent contact with people and –

A: Correct.

Q: Or dealing with the public? Injection –

A: Occasional contact with co-workers and or supervisors.

Q: Okay, that was injection molding tender?

A: Yes.

Q: Now is that job, is that performed at a bench or something like

> that? Would that be seated or standing?
>
> A: It can be performed either way, Your Honor, and it's not performed at a bench, it's performed at a machine.
>
> Q: Okay, so you could stand or sit?
>
> A: Right, correct. Electronics worker, 726.687-010, light, SVP of 2, 1,000, 4,000, 70,000.
>
> Q: Okay.
>
> A: Do you want more, Your Honor?
>
> Q: Electronics workers, does that also allow for alternating positions?
>
> A: Yes.
>
> Q: Make sure I don't miss anything here. If the person, in addition to those problems, has some limitation in the use of the, the hands for fine manipulations that could be used occasionally, but not more than occasionally for fine manipulations, also if the arms, the arms cannot be raised for more than a few minutes because they'll become numb -
>
> A: To shoulder level?
>
> Q: Brushing your teeth, yeah, that's shoulder level.
>
> A: That's shoulder level, okay, thank you.
>
> Q: Would that, would those additional limitations affect the ability to do those jobs?
>
> A: I don't think so, your Honor.

(R. 79-82).

As noted by the Plaintiff, the ALJ found that Plaintiff would not have been able to perform activities in "dust, fumes, gases, or other pulmonary irritants due to bouts with bronchitis and coughing." (R. 29). The hypothetical questions posed to the vocational expert failed to incorporate

all of the Plaintiff's impairments, namely they did not consider whether the aforementioned jobs would expose Plaintiff to dust, fumes, gases, or other pulmonary irritants. The VE was never given the opportunity to ascertain whether the light work mentioned at the hearing would expose Plaintiff to the dust, fumes, gases, or other pulmonary irritants listed by the ALJ. Accordingly, it is the recommendation of this Court that this cause be remanded on this basis so that hypothetical questions including all of the Plaintiff's impairments may be posed to the VE.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the decision by the ALJ is not supported by substantial evidence and that the correct legal standards were not applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation. Accordingly, it is the recommendation of this Court that the Motion for Summary Judgment filed by the Plaintiff (D.E. #40) be **GRANTED** and the Motion for Summary Judgment filed by the Defendant (D.E. #41) be **DENIED.**

Pursuant to Local Magistrate Rule 4(b) the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this \_\_\_11\_\_\_ day of January, 2008.

```
                                    [signature]
                                    ROBERT L. DUBÉ
                                    UNITED STATES MAGISTRATE JUDGE
```

cc: Honorable Joan A. Lenard
    Jeffrey W. Dickstein, AUSA
    Lilli W. Marder, Esq.